IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BILL KAPRANTZAS, §
 §
  Plaintiff, §
 § Civil Action No. 3:17-CV-0780-D
VS. §
 §
CITIMORTGAGE, INC., §
 §
  Defendant. §

MEMORANDUM OPINION
AND ORDER

Defendant CitiMortgage, Inc. ("Citi") moves for summary judgment in this action arising from a residential foreclosure. The dispositive question presented is whether Citi had a duty under RESPA[1] and its implementing regulation[2] to evaluate plaintiff Bill Kaprantzas' ("Kaprantzas'") application for loss mitigation options and cease foreclosure. For the following reasons, the court concludes that Citi is entitled to summary judgment and dismisses this action with prejudice.

I

In 1996 Kaprantzas and his wife purchased real property ("property") located in Mesquite, Texas.[3] To finance the purchase, Kaprantzas borrowed $92,620.00 ("loan") and

---

[1]The Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617.

[2]Regulation X, 12 C.F.R. § 1024.

[3]In deciding this motion, the court views the evidence in the light most favorable to Kaprantzas as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex.

executed an adjustable rate note ("note"), promising to repay the loan in its original amount plus interest. To secure repayment of the note, Kaprantzas and his wife executed a deed of trust granting a first lien against the property.

In 2009 Kaprantzas' loan was transferred to Citi. Both before and after this transfer, Kaprantzas and his wife struggled to make timely payments on the loan.

On October 6, 2016 Citi accelerated the debt and scheduled the property for foreclosure on November 1. On October 12 Kaprantzas faxed a loss mitigation application to Citi. Over the next five business days, Citi sent Kaprantzas four letters. First, on October 14 Citi sent a letter acknowledging receipt of the application; second, on October 17 Citi sent a letter explaining that the application was complete and that Citi would notify Kaprantzas if it needed additional documents; third, on October 18 Citi sent a letter advising Kaprantzas that additional documents were needed to complete his application; and fourth, also on October 18, Citi sent a letter rescheduling the foreclosure sale to January 3, 2017. Citi followed up with Kaprantzas multiple times in an attempt to obtain the supplemental documentation by its imposed deadline of November 17, but Kaprantzas did not provide any additional documents and Citi closed Kaprantzas' loss mitigation module on November 25.

In December Kaprantzas began attempting to supplement his loss mitigation application. For approximately two weeks, Kaprantzas and Citi communicated about the loss mitigation application. On December 28 Citi mailed Kaprantzas an acknowledgment letter,

---

2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

but it did not request additional documents. Instead of foreclosing on January 3, 2017, Citi rescheduled the foreclosure sale to February 7. On January 12 Citi mailed new notices of acceleration and sale to Kaprantzas, and on January 30 Citi sent Kaprantzas a loss mitigation denial letter. The foreclosure sale took place as scheduled on February 7; Citi purchased the property for $148,500.00. As of the date of the sale, Kaprantzas owed approximately $273,000 on his loan and had not made a payment towards the loan since October 2013.[4]

Kaprantzas remains in possession of the property, he has not tendered to Citi the amount due on the loan, and Citi currently pays the insurance and taxes on the property. Kaprantzas filed the instant action in March 2017, asserting violations of RESPA and the Texas Debt Collection Practices Act ("TDCPA"), wrongful foreclosure, quiet title, and trespass to title, and seeking declaratory relief, equitable relief, and an accounting. Citi now moves for summary judgment on all of Kaprantzas' claims.[5] Kaprantzas opposes the motion.

---

[4]In his response brief, Kaprantzas moves to strike Sheila Hackmann's ("Hackmann's") testimony regarding the amount due at the time of foreclosure. The basis of his evidentiary objection is that the statement is conclusory because "[t]he affidavit does not state how this amount was calculated nor does Defendant attach any documents to support this contention." P. Resp. 8-9. The court overrules Kaprantzas' objection to Hackmann's declaration. As Citi points out in its reply brief, Hackmann's declaration describes her role at Citi and lays the proper foundation for a variety of business records, one of which substantiates her statement that Kaprantzas owed approximately $273,000 on his loan. *See* D. Reply 1-2.

[5]Citi has also filed a motion to strike, in which it objects to Kaprantzas' timeline, loss of equity analysis, and loss mitigation damage analysis, as well as to an electronic message from Citi allegedly sent in early January 2017. Because the court has not relied on this evidence in deciding Citi's motion for summary judgment, it denies the motion to strike as moot.

II

Because Citi is moving for summary judgment on claims for which Kaprantzas will bear the burden of proof at trial,[6] Citi can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support Kaprantzas' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Citi does so, Kaprantzas must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Kaprantzas' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Kaprantzas' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citing *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.)). Summary judgment is mandatory if Kaprantzas fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to Citi's motion for summary judgment on the statute of limitations, certain violations of the TDCPA (Tex. Fin. Code Ann. §§ 392.303(a)(2) and 392.304(a)(8) and (19)), wrongful foreclosure, and declaratory relief. Kaprantzas has

---

[6]Although Citi also moves for summary judgment on its affirmative defense of judicial estoppel, on which it would bear the burden of proof at trial, the court does not reach this ground—and thus does not recite the summary judgment standard for that defense—because the other grounds presented are dispositive.

affirmatively "withdrawn"—and thus failed to designate specific facts raising a genuine issue for trial on—these theories of recovery. Accordingly, the court grants summary judgment dismissing the claims premised on violations of Tex. Fin. Code Ann. §§ 392.303(a)(2) and 392.304(a)(8) and (19), wrongful foreclosure, and declaratory relief.

IV

The court next considers Citi's motion for summary judgment on Kaprantzas' RESPA claim.

A

RESPA was enacted to protect consumers from "unnecessarily high settlement charges caused by certain abusive [mortgage] practices." 12 U.S.C. 2601(a); *Moreno v. Summit Mortg. Corp.*, 364 F.3d 574, 576 (5th Cir. 2004). Regulation X implements RESPA, and § 1024.41—entitled "Loss mitigation procedures"—specifically regulates loss mitigation procedures provided by loan servicers. *See* 12 C.F.R. § 1024.41. Section 1024.41 does not require that a servicer "provide any borrower with any specific loss mitigation option." *Id.* § 1024.41(a). Instead, it specifies required procedures, including deadlines for reviewing timely loss mitigation applications, and requirements for notifying borrowers in writing, within 30 days of receipt of a complete loss mitigation application,[7] which loss mitigation options, if any, it will offer the borrower, or the specific reasons for denying a complete loss

---

[7]Under § 1024.41(b)(1), "[a] complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

- 5 -

mitigation application. *Id.* § 1024.41(c)(1)(ii) and (d). "Section 1024.41 is privately enforceable under § 6(f) of RESPA, 12 U.S.C. § 2605(f)." *Ruiz v. PennyMac Loan Servs., LLC*, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.) (citing 12 C.F.R. § 1024.41(a)).

In his complaint, Kaprantzas alleges that Citi violated four subsections of § 1024.41: (b)(2), (c)(1), (g), and (h).[8] Each of these subsections prescribes a different requirement with which a mortgage servicer must comply, provided the loss mitigation application is timely.

B

Citi contends that Kaprantzas' RESPA claim fails as a matter of law because, *inter alia*, none of the protections or duties of § 1024.41(b)(2), (c)(1), (g), or (h) was triggered by Kaprantzas' loss mitigation application. Citi reasons that the application was never "complete," and, even if it was complete (or became complete), it was not submitted sufficiently in advance of the scheduled foreclosure. Kaprantzas responds that Citi's RESPA obligations arose because, *inter alia*, he submitted his complete loss mitigation application sufficiently in advance of the date that the foreclosure sale actually occurred.

---

[8]Kaprantzas alleges that Citi violated § 1024.41(b)(2) "because it failed to promptly review Plaintiff's loss mitigation application for completeness and appropriately notify Plaintiff of the same," Compl. ¶ 54; that Citi violated § 1024.41(c)(1) "by failing to evaluate Plaintiff's loan modification application, notify Plaintiff of the same, including notifying Plaintiff of his right to appeal a denial of said application," *id.* ¶ 55; that Citi violated § 1024.41(g) "by conducting a foreclosure sale in the review period after Plaintiff submitted a complete loss mitigation application," *id.* ¶ 56; and that Citi violated § 1024.41(h) "by failing to give Plaintiff the right to appeal before foreclosing on Plaintiff's Property," *id.* ¶ 57.

The duties that § 1024.41(b)(2), (c)(1), and (g) impose are triggered only if the loss mitigation application is submitted or received in compliance with the applicable deadline prescribed by regulation. *See* 12 C.F.R. § 1024.41(b)(2)(i) ("If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall . . . ."); *id.* § 1024.41(c)(1) ("[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then . . . a servicer shall . . . ."); *id.* § 1024.41(g) ("If a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer shall not . . . ."). And the right to appeal outlined in § 1024.41(h) arises only if the loss mitigation application is received more than 90 days before a foreclosure sale, or during the period set forth in § 1024.41(f). *See id.* § 1024.41(h)(1) ("If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall . . . .").

Kaprantzas contends that the court should conclude that Citi's RESPA obligations arose because he submitted his complete loss mitigation application "more than forty days prior to the February 7 foreclosure sale." P. Resp. 12-13. Citi maintains that the *scheduled* date at the time the loss mitigation application was received should control over the *actual* date of the foreclosure sale for purposes of determining whether RESPA obligations arose. The court agrees with Citi.

Courts that have addressed this issue—including a federal court of appeals—have concluded that the *scheduled* date controls over the *actual* date of foreclosure. *See Lage v.*

*Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1009-11 (11th Cir. 2016) (per curiam); *see also*

*Grutsch v. Wells Fargo Bank, N.A.*, 2017 WL 1091681, at *4-6 (S.D. Ohio Mar. 23, 2017);

*Garmou v. Kondaur Capital Corp.*, 2016 WL 3549356, at *5 (E.D. Mich. June 30, 2016).

As the Eleventh Circuit explained in *Lage*:

> to determine whether the Borrowers' application was timely, we must ask whether, when the Borrowers submitted their complete loss mitigation application on January 27, more than 37 days remained before the foreclosure sale was scheduled to occur. Because we determine timeliness based on the scheduled date of the foreclosure sale as of the date the Borrowers' complete application was received, it is irrelevant to our timeliness analysis that Ocwen subsequently rescheduled the foreclosure sale for a later date.
>
> The Borrowers argue that we must use the date when the property was actually sold at foreclosure to assess whether their application was timely. They assert that because § 1024.41(b)(3) discusses when the foreclosure sale "occurs," the relevant date for measuring timeliness is the date the foreclosure sale actually transpires. But this interpretation is inconsistent with the final clause of paragraph (b)(3), which plainly states that we must measure the proximity between the date of the foreclosure sale and the receipt of the complete loss mitigation application "as of the date a complete loss mitigation application is received." We cannot adopt the Borrowers' interpretation because it would render this phrase in the regulation meaningless.

*Lage*, 839 F.3d at 1010 (citations omitted).[9]

---

[9]Section 1024.41(b)(3) provides:

> [t]o the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination

The *Lage* panel also explained that, although it need not consider rule commentary because the language is unambiguous, the foregoing interpretation is consistent with the Consumer Financial Protection Bureau's ("Bureau's") adoption commentary. *See id.* (citing Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 60,382, 60,396-97 (Oct. 1, 2013)). In response to inquiries about how the timing provisions in § 1024.41 worked when a foreclosure sale was rescheduled after a completed application was received, the Bureau stated that, "for purposes of § 1024.41, timeliness based on the proximity of a foreclosure sale to the receipt of a complete loss mitigation application will be determined as of the date a complete loss mitigation application is received." *Id.* (quoting 78 Fed. Reg. at 60,397). The Bureau was concerned that certainty and simplicity would be compromised if the rule were structured "such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled." 78 Fed. Reg. at 60,397. The Bureau was also "concerned that if moving a foreclosure sale to a later date could trigger new protections, such a policy may provide a disincentive for a servicer to reschedule a foreclosure sale for a later date." *Id.* "The Bureau thus made clear that an untimely application should not become timely simply because the servicer rescheduled a foreclosure sale." *Lage*, 839 F.3d at 1010.

---

> shall be made *as of the date a complete loss mitigation application is received*.

12 C.F.R. § 1024.41(b)(3) (emphasis added).

C

In the present case, there are only two application dates that are necessary to analyze to determine timeliness: October 12, 2016 and December 28, 2016. Kaprantzas alleges in his complaint that his loss mitigation application was complete in October 2016; and he asserts in his summary judgment response that his loss mitigation application was facially complete on December 28, 2016.[10] The court need not resolve whether Kaprantzas' October 12 or December 28 application was the one that was "complete" for purposes of evaluating his RESPA claim. In either case, none of the § 1024.41 protections or duties was triggered.

1

The court first evaluates the October loss mitigation application. The uncontroverted summary judgment evidence shows that Kaprantzas submitted a loss mitigation application on October 12, 2016, and that, at that time, a foreclosure sale was scheduled for November 1. Even if the court assumes *arguendo* that Kaprantzas' application was "complete" as of October 12, no § 1024.41 duties were triggered because October 12 was only 20 days before the scheduled foreclosure sale.[11]

---

[10]Citi questions the propriety of Kaprantzas raising this "new theory" of facial completeness as of December 28 in a response to summary judgment. Because the court can dispense with Kaprantzas' new theory with little difficulty, the court assumes, *arguendo*, that the theory is properly before the court.

[11]Although Kaprantzas implicitly acknowledges that his October loss mitigation application was not "complete" and thus did not trigger RESPA protections (he does not argue this position in his opposition), the court addresses the position because Kaprantzas alleged in his complaint and testified at his deposition that his application was complete in October.

2

The court reaches the same result even if it assumes that the loss mitigation application was complete as of December 28, 2016. The undisputed summary judgment evidence establishes that, as of that date, a foreclosure sale was scheduled for January 3, 2017—or five days later. It was not until January 3 that the foreclosure was rescheduled for February 7 (at which point the property was sold). Therefore, even if the court assumes that Kaprantzas' loss mitigation application was facially complete as of December 28, no RESPA duties were triggered.

3

In his response to Citi's motion, Kaprantzas also posits that he was entitled to appeal because Citi received a complete loss mitigation application "before [it had] made the first notice or filing as required by applicable law for any judicial or non-judicial foreclosure process." 12 C.F.R. § 1024.41(f)(2). The court disagrees. Kaprantzas maintains that his application was complete on December 28 and that he did not receive first notice of the foreclosure process until January 12, thus triggering a right to appeal. The summary judgment evidence, however, would only enable a reasonable jury to find that Kaprantzas received notice of the scheduled January 3 foreclosure on October 18. And the operative time for analyzing whether duties or protections arise is as of the date the complete loss mitigation application was received.

In sum, whether the court uses October 12 or December 28 as the date of evaluating Kaprantzas' RESPA claim, the outcome is the same: no duties were triggered because

Kaprantzas' loss mitigation application—whether complete or not—was not submitted sufficiently in advance of a scheduled foreclosure. That Citi rescheduled the foreclosure sale did not make Kaprantzas' application timely or trigger the protections of § 1024.41. Accordingly, Kaprantzas has failed to raise a genuine issue of material fact on his RESPA claim, and Citi is entitled to summary judgment.

V

The court next considers Citi's motion for summary judgment on Kaprantzas' TDCPA claim. As discussed above, *see supra* § III, Kaprantzas has withdrawn his TDCPA claims premised on Tex. Fin. Code Ann. §§ 392.303(a)(2) and 392.304(a)(8) and (19). Kaprantzas' TDCPA claim premised on Tex. Fin. Code Ann. § 392.301(a)(8) remains. Section 392.301(a)(8) provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices . . . threatening to take an action prohibited by law."

Citi maintains that Kaprantzas' TDCPA claim fails, in part, because Citi's actions were not prohibited by RESPA. Kaprantzas responds that Citi "threaten[ed] to take an action prohibited by law" by threatening to foreclose, and foreclosing, on Kaprantzas' property when doing so was prohibited by RESPA. Citi replies, *inter alia*, that regardless of Kaprantzas' RESPA claims, Citi did not violate § 392.301(a)(8) by threatening to foreclose because it never waived its contractual right to foreclose.

Because the court concludes that Kaprantzas failed to raise a genuine issue of material fact on his RESPA claim, Kaprantzas' TDCPA claim also fails. *See Germain v. U.S. Bank*

*Nat'l Ass'n*, 2018 WL 1517860, at *7 (N.D. Tex. Mar. 28, 2018) (Lynn, C.J.) ("As discussed, because the evidence shows that Ocwen complied with RESPA, Plaintiff's claim that Defendants unlawfully foreclosed on his Property because Ocwen failed to comply with RESPA lacks merit."), *appeal docketed*, No. 18-10508 (5th Cir. Apr. 27, 2018).

And even had Kaprantzas raised a genuine issue of material fact on his RESPA claim, he still would have failed to create a genuine and material fact issue on his allegation of a TDCPA violation. This is so because a reasonable jury could not find that Citi was threatening to take an action prohibited by law.

Kaprantzas' argument rests on a misapplication of *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463 (5th Cir. 2015), to the instant case. In *McCaig* a mortgagee affirmatively waived its contractual right to foreclose via a settlement agreement. In the present case, there is no evidence exists that suggests that Citi waived its contractual right to foreclose. Citi was within its right to foreclose because it had not waived this right and Kaprantzas had defaulted on his mortgage. *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015). Citi is therefore entitled to summary judgment on Kaprantzas' TDCPA claim.

VI

The court next considers Kaprantzas' remaining claims of quiet title and trespass to title, as well as the remedies of an accounting and equitable relief. Citi maintains that the balance of Kaprantzas' claims and remedies fail because each is premised on a violation of RESPA or the TDCPA. The court agrees.

Kaprantzas maintains that he is entitled to recover on his title actions and to obtain equitable relief because Citi's foreclosure "was prohibited by federal regulations." P. Resp. 18, 20. But Kaprantzas has failed to raise a genuine issue of material fact in this respect because, as explained above, *see supra* § IV, Citi had no duty under the federal regulations to cease foreclosure. And Kaprantzas acknowledges that an accounting is a form of relief, thus implicitly acknowledging that he must have raised a genuine issue of material fact on one of his causes of action to be entitled to this relief. Accordingly, a reasonable jury could not find in Kaprantzas' favor on his title claims or remaining forms of relief, and Citi is entitled to summary judgment.

\* \* \*

For the reasons explained, the court grants Citi's motion for summary judgment and dismisses Kaprantzas' action with prejudice by judgment filed today.[12]

**SO ORDERED**.

October 5, 2018.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[12]Citi's motion to strike portions of the declaration of Kaprantzas is denied as moot. *See supra* note 5.